IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE DOYLE MAUPIN SR., | CASE NO. CV-F-03-6051 REC WMW HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS RE PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | [Document 6] |
| SYLVIA GARCIA, Warden, et al., | |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

**PROCEDURAL HISTORY**

Following a trial in Stanislaus County Superior Court, on July 14, 1999, a jury found Petitioner guilty of fourteen counts of lewd and lascivious acts with a child under fourteen years (counts 1 - XIV), one count of exhibiting harmful matter with intent to seduce a minor (count XV), one count of possession of methamphetamine (count XVI) and one count of dissuading a witness (count XIX). As to counts I through XIV, the jury found true a special allegation that Petitioner committed acts set forth in Penal Code Section 667.61(b). The court granted the prosecution's motion to dismiss counts IX, XVII and XVIII.

On December 6, 1999, the court sentenced Petitioner to a term of 47 years and 8 months

to life as follows: count I - fifteen years to life; counts II through IV - fifteen years to life, stayed pursuant to Section 654; count V - fifteen years to life; counts VI through VIII - fifteen years to life, stayed pursuant to Section 654; count X - fifteen years to life; counts XI through XIV - fifteen years to life, stayed pursuant to section 654; count XV - eight months; count XVI - two years, to be served concurrent to count I; and count XIX - two years.  The court further ordered Petitioner to pay a $9,400 restitution fine pursuant to Section 1202.4(b)[1] and imposed an additional $2,520 victim restitution fine pursuant to Section1202.4(f).  A $500 fine was imposed pursuant to Section 288(e) and Petitioner was ordered to register as a sex offender pursuant to Section 290.

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District ("Court of Appeal").  On February 25, 2002, the Court of Appeal entered an unpublished decision modifying the judgment to include a Section 1202.45 parole revocation restitution fine in the amount of $9,400, suspended unless parole is revoked.  Otherwise the judgment was affirmed in its entirety.

Petitioner filed a petition for review with the California Supreme Court.  The court denied the petition without comment.

On August 4, 2003, Petitioner filed the present petition for writ of habeas corpus pending before this court.  The case is proceeding on the amended petition filed on October 30, 2003.  Respondent opposes the petition.

**LEGAL STANDARD**

JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the court has jurisdiction over the action.

---

[1] Unless otherwise specified, all further references to statutory sections are to the California Penal Code.

2

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on July 9, 2003, after the enactment of the AEDPA, thus it is governed by its provisions.

STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1174 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction

3

is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888. A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court. See, Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which

entitle the petitioner to relief.").

In cases such as this in which the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

**DISCUSSION**

Jury Instruction Regarding Penal Code Section 667.61

Petitioner contends that his three consecutive terms of 15 years to life imposed for the three convictions under Section 288(a) for committing lewd and lascivious acts with a child under fourteen years of age must be stricken. Petitioner claims that the jury was inadequately instructed regarding crucial elements of the Section 667.61, thereby abridging his right to trial by jury. Respondent disputes this contention.

In addressing this contention, the Court of Appeal held as follows:

> In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, our nation's high court held that a defendant has a federal constitutional right to have a jury determine, beyond a reasonable doubt, any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum. The question presented here is whether that holding required a jury to determine whether a defendant convicted of a violation of section 288, subdivision (a) is eligible for probation when the defendant is alleged to come within the provisions of the one strike law. We find that a jury determination of probation eligibility is unnecessary under the rule of *Apprendi*.
>
> Appellant was sentenced pursuant to section 667.61, subd.(b) which provides that
>
> "a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j)."
>
> Subdivision(c)(7) states that the section applies to "[a] violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066." [Footnote omitted.] Subdivision (e)(5) applies to offenses where the "defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c)

5

> against more than one victim."
>
> At trial, the jury was instructed that they were required to find whether the section 667.61 allegation applied to appellant and in order to prove the allegation, the People had the burden of proving, beyond a reasonable doubt, that appellant committed a violation of section 288, subdivision (a) against more than one victim. In returning its verdict, the jury specifically found that appellant had violated section 288, subdivision (a) and that the violations were committed against more than one victim.
>
> Appellant argues that the trial court erred in failing to instruct the jury regarding probation eligibility pursuant to section 1203.066. He claims that pursuant to the high court's decision in *Apprendi v. New Jersey*, the trial court was required to submit the issue of probation eligibility to the jury because the one strike law only applies to a person convicted of a violation of section 288, subdivision (a), where that person is not eligible for probation under section 1203.066, subdivision(c).(§ 667.61, subd. (C)(7).) As we will explain, we find appellant's argument unpersuasive.

Unpublished Opinion in Case No. F034753, 6 -7. After describing the facts underlying *Apprendi*, the Court of Appeal went on to explain:

> The issue presented to the Supreme Court was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." (*Apprendi v. New Jersey, supra*, 530 U.S. at p. 469.) The court reviewed the importance of having a jury determine guilt beyond a reasonable doubt. This right, the court explained, extended to any fact, other than the fact of a prior conviction, which increased the punishment for a crime. (*Id.* at pp. 482-485.) In essence, the court treated the sentence enhancement as the equivalent to an element of the offense. In determining the "elemental" nature of the factor, the court stated the "relevant inquiry is one not of form, but of effect – *does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict*?" (*Id.* at page 494, emphasis added, fn. omitted.) Since Apprendi's motive in committing the crime subjected him to a greater penalty, the court held that Apprendi was entitled to have a jury determine his purpose in committing the crime.
>
> It is clear from the foregoing discussion that *Apprendi* only applies to situations where a defendant is exposed to greater punishment than otherwise authorized by the jury's verdict. The courts of our state have recognized this principle and have held a jury need not decide issues which do not increase the maximum penalty otherwise authorized by the jury's verdict. (See *People v. Senpadychith* (2001) 26 Cal.4th 3165, 325-327 [holding that a defendant did not have a federal constitutional right to have a jury decide the applicability of a gang enhancement where the enhancement did not increase the maximum punishment for the underlying crime]; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 268-271 [holding a jury was not required to determine the applicability of section 654 because that section did not increase the penalty for the underlying crimes].)
>
> Here appellant was exposed to a term of imprisonment for 15-years to life based upon the jury's finding regarding the one strike allegation. Section 667.61, subdivision (b) provides that "a person who is convicted of *an offense* specified in subdivision (c) under *one of the circumstances* specified in subdivision (e) *shall* be punished by imprisonment in the state prison for life . . . ." (Emphasis added.) Pursuant to this section the applicability of the one strike law depends upon a determination that the defendant committed an enumerated offense under an enumerated circumstance. The jury determined that appellant had committed a violation of 288, subdivision (a), which is an offense listed in subdivision (c). In addition, it specifically found that appellant committed the offense against one or more victims, a circumstance listed in subdivision (e). (§ 667.61, subd. (e)(5).) Pursuant to the provisions of the statute, the determination of these two facts subjected appellant to the increased punishment.
>
> Appellant argues that he is not subject to the provisions of the one strike law if there is a determination that he is eligible for probation, therefore, the jury must determine probation

eligibility. We disagree. Subdivision (b) provides that a person who commits an enumerated offense under an enumerated circumstance "shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j)." Therefore, a defendant convicted of a violation of section 288, subdivision (a) against more than one victim is to be sentenced to a term of 15 years to life. However, subdivision (c)(7) makes an exception in the case of a defendant who is eligible for probation under Section 1203.066. Subdivision (h) provides that "[p]robation shall not be granted to, nor shall the execution or imposition or sentence be suspended for, any person who is subject to punishment under this section for any offense specified in paragraphs (1) to (6), inclusive, of subdivision (c)." This section demonstrates that the Legislature provided that a person convicted of a section 288, subdivision (a) violation may be eligible for probation, notwithstanding the one strike law. A finding that a defendant is eligible for probation, therefore, does not increase the penalty authorized by the jury's verdict. Rather, a finding of probation eligibility does just the opposite, it mitigates the possible punishment. Since a determination of appellant's probation eligibility does not increase the penalty authorized by the jury's verdict, appellant was not entitled to have a jury determine this fact. We find no error.

Unpublished Opinion in Case No. F034753, 8 - 10.

The court finds the Court of Appeal's discussion of the <u>Apprendi</u> decision and its application to Petitioner's claim to be a very accurate statement of the law. In addition, the Ninth Circuit held in <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664, 667 (9th Cir. 2002), that <u>Apprendi</u> does not apply retroactively to cases on collateral review. Thus, even were <u>Apprendi</u> applicable to Petitioner's criminal case, he is precluded from invoking <u>Apprendi</u> on collateral review. Therefore, the court finds that Petitioner has failed to carry his burden of demonstrating that the Court of Appeal's adjudication of this <u>Apprendi</u> claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Accordingly, the court concludes that this claim provides no basis for habeas corpus relief.

<u>Sentencing Petitioner to Three Fifteen Years to Life Terms</u>

Petitioner contends that the trial court erred in sentencing him to three consecutive life sentences under Section 667.61, for three convictions of violating Section 288(a). Petitioner claims that only two life sentences were authorized by statute. Respondent disputes this claim.

The Court of Appeal rejected this claim, explaining as follows:

Section 667.61 provides that a person convicted of certain enumerated offenses identified in subdivision (c) shall be sentenced to 15 years to life where the defendant committed the offense "against more than one victim." (§ 667.61, subds. (b), (c) & (e)(5).) Appellant was

> convicted of an enumerated offense against three victims. Based on this fact, the trial court sentenced appellant to three life terms. Appellant contends that the trial court erred in imposing three life terms and argues that only two life terms were authorized by the statute. He reasons that since there were three victims, only two could qualify as a second victim under the statute, thereby mandating only two life terms. We disagree.
>   In *People v. DeSimone* (1998) 62 Cal.App.4th 693, the Second District was confronted with a similar issue. There the defendant was convicted of two subdivision (c) offenses against two victims. The defendant argues that only one life sentence could be imposed per case. He claimed that it would be unreasonable to allow the multiple victim circumstance to be used more than once per case because the law would require at least two life terms whenever there was more than one victim. The court flatly rejected this argument noting that perpetrators who strike more than one victim are more dangerous than other perpetrators and opined that the Legislature could conclude that an offender who committed sexual offenses against more than one victim should be subjected to on life term per victim. (*Id.* at p. 698.)
>   Likewise, in *People v. Murphy* (1998) 65 Cal.App.4th 35 the court explained that the only limitation on the number of life sentences which can be imposed on a defendant pursuant to section 667.61 is contained in subdivision (g). That section provides in relevant part that if "there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim." There, the defendant had committed six subdivision (c) offenses against one victim and one offense against another victim. The only applicable circumstance that triggered punishment pursuant to the one strike law was that the defendant committed the offenses against more than one victim. (*Id.* at p. 40.) Under these circumstances, the defendant should have been sentenced to seven life terms under the plain meaning of the statute. However, subdivision (g) limited the number of terms in that case to one life term per victim; therefore, the defendant was properly sentenced to two life terms. (*Id.* at pp. 40-41.)
>   Here, the jury specifically found that appellant had committed his crimes against more than one victim as to each offense. The trial court subsequently sentenced appellant to three life terms, one for each of the victims. As to each victim, appellant committed the offense against more than one victim. Pursuant to the terms of the statute, appellant was to be sentenced to one life term per victim. (§ 667,61, subd. (b), (c), (e) & (g); *People v. Murphy, supra*, 65 Cal.App.4th at pp. 40-41; *People v. DeSimone, supra*, 62 Cal.App.4th at pp. 698-699; see *People v. Jones* (1997) 58 Cal.App.4th 693, 719.) Thus, we find that appellant was properly sentenced.

Unpublished Opinion in Case No. F034753, 10-12.

Habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985). Accordingly, the court must agree with Respondent that this claim presents no basis for habeas corpus relief.

Sufficiency of Evidence Regarding Violation of Penal Code Section 288.2

Petitioner contends that there was insufficient evidence presented at trial to support his conviction under Penal Code Section 288.2. Specifically, Petitioner claims that the record is insufficient to establish that the movies seen by the minors were actually "harmful matter" as defined by the statute. Respondent disputes this contention.

8

In addressing this claim, the Court of Appeal found as follows:

> Appellant argues that there was insufficient evidence to support his conviction for exhibiting harmful matter to a minor because there was no evidence from which the jury could infer the exact nature of the movies. Further, he claims the description given by the victim was insufficient for the jury to determine that the movies contained "harmful matter." We disagree.
> 
> The crime of exhibiting harmful matter to a minor is defined in section 288.2 as follows:
> 
> "(a) Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including, but not limited to, live or recorded telephone messages, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent or for the purpose of seducing a minor, is guilty of a public offense and shall be punished by imprisonment in the state prison or county jail."
> 
> Section 313 provides:
> 
> "(a) 'Harmful matter' means matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the purient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."
> 
> "Matter" is defined in subdivision (b) as including any "book, magazine, newspaper, video recording, or other printed or written material . . . ."
> 
> When the sufficiency of the evidence is challenged on appeal, the court reviews the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - that is, evidence that is reasonable, credible, and of solid value - from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Welch* (1999) 20 Cal.4th 701, 758; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, including reasonable inferences based on the evidence and excluding inferences based on speculation or conjecture. (*People v. Tran* (1996) 47 Cal.App.4th 759, 771-772.) "The same standard applies to the review of circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932 . . . .)" (*People v. Ceja* (1993) 3 Cal.4th 1134, 1138.)
> 
> The definition of harmful matter, as defined in section 313, incorporates the test for obscenity articulated in *Miller v. California* (1973) 413 U.S. 15, 24. (*People v. Hsu* (2000) 82 Cal.App.4th 976, 992; 4 Stats. 1988, Summary Dig., ch. 1378, p. 472.) In *Miller*, the United States Supreme Court set out the guidelines for the states in regulating obscene material. The high court held the states could regulate materials that "taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have a serious literary, artistic, political, or scientific value." (*Miller v. California, supra*, 413 U.S. at p. 24.) In determining whether such material is obscene, the trier of fact must decide "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (*Ibid.*) The court went on to give some examples of material that would fall under these standards. These examples included "[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated." (*Id*. at p. 25.)
> 
> In this case, the evidence was sufficient for the jury to infer that the videos appellant showed the victims contained "harmful matter." Each of the victims testified that appellant had shown them movies. Patricia identified the movies as "nasty" and described them as depicting naked people lying in bed touching and rubbing each other's "privates." In addition they were rubbing "each others [*sic*] privates against each other." Jennifer stated that she watched "dirty"

9

> movies at appellant's house. The movies portrayed boys "putting their things into girls and sometimes putting them into boy's [*sic*] butts." It became clear through questioning that the term "thing" referred to a penis. Jennifer also testified that appellant would try to kiss her while watching the movies. Jessica described watching "nasty videos" with appellant. The movies showed naked boys and girls having sex on the porch.
>
> Deputy Parker interviewed the victims regarding their allegations. Patricia told Deputy Parker that appellant had shown her "nasty" movies in which men and women were having sex. While watching the movie, appellant exposed himself to her and placed her hand on his "private part." Sergeant Beck testified that he found six pornographic video tapes in appellant's home. The videos depicted naked men and women having sex.
>
> Appellant admitted to owning several pornographic movies depicting men and women engaging in sexual acts. He explained that he had caught the children watching one of the movies unsupervised when he came home from work. He turned the movie off and told Angela about the incident, but she never did anything about it. He also stated that he should have kept the movies in his safe and that he was "stupid" for not doing so.
>
> Appellant contends that this evidence was insufficient because there was no evidence that the movies he showed to the children lacked serious literary, artistic, political or scientific value for minors. He argues that one "man's pornography may be another's Oscar-winning 'Shakespeare In Love' or 'The Titanic,' two award-winning movies both of which depicted men and women having sex." We disagree. In addition to describing the acts that were portrayed in the movies, the victims described the movies as "nasty" and "dirty" and portraying people doing "[s]ick stuff." This indicated that the movies lacked any redeeming value. Furthermore, the movies appeared to be quite explicit in their portrayal of sexual activity. Patricia stated the movies showed nude men and women lying in bed and rubbing each other's "privates." Although the jury never saw the actual movies appellant showed the victims, their testimony was sufficient to allow the jury to infer that the films depicted explicit acts of sexual intercourse and sodomy, which the jury could certainly determine lacked any "serious literary, artistic, political, or scientific value for minors."

Unpublished Opinion in Case No. F034753, 12 - 15.

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324 n. 16.

The court finds that Petitioner has failed to carry his burden of demonstrating that the Court of Appeal's adjudication of this insufficiency of the evidence claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Quite to the contrary, as explained by the Court of Appeal, there was clearly enough

evidence presented by which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Accordingly, the court concludes that this claim presents no basis for habeas corpus relief.

<u>Definition of Reasonable Doubt Provided to the Jury</u>

Petitioner contends that the definition of reasonable doubt provided to the jury in his case violated his right to due process of law. He claims that it erroneously reduced the prosecution's burden of proof in establishing Petitioner's guilt. Respondent disputes this contention.

The Court of Appeal rejected this contention, finding in part as follows:

> Appellant contends the 1994 revision to CALJIC No. 2.90 contains an incorrect and incomplete definition of reasonable doubt. He claims the instruction is incorrect because it defines reasonable doubt in terms of an "abiding conviction" rather than a "moral certainty." Prior to 1994 the second paragraph of CALJIC no. 2.90 stated:
> 
> "Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."
> 
> In *Victor v. Nebraska* (1994) 511 U.S. 1, the Supreme Court upheld this version of CALJIC No. 2.90, but criticized as archaic the instruction's use of the phrase "moral certainty."
> 
> "We do not think it reasonably likely that the jury understood the words 'moral certainty' either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof. As modern dictionary definitions of moral certainty attest, the common meaning of the phrase has changed since it was used in the *Webster* instruction, and it may continue to do so to the point that it conflicts with the *Winship* standard. Indeed, the definitions of reasonable doubt most widely used in the federal courts do not contain any reference to moral certainty." (511 U.S. at pp. 16-17.)
> 
> After *Victor* was decided, the California Supreme Court in *People v. Freeman* (1994) 8 Cal.4th 450 recommended the use of a reasonable doubt instruction which deleted the phrases "and depending on moral evidence" and "to a moral certainty." The *Freeman* instruction thus defined reasonable doubt as follows:
> "It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.'" (*People v. Freeman*, *supra*, 8 Cal.4th at p. 504, fn. 9.)
> 
> The second paragraph of CALJIC No. 2.90 was then revised in 1994 in accordance with the California Supreme Court's suggestion in *Freeman*. The jury in appellant's case was instructed with this 1994 revision of the second paragraph of CALJIC NO. 2.90 as follows:
> 
> "Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is

> that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."
>
> In *People v. Light* (1996) 44 Cal.App.4th 879, this court considered and rejected the contention that the 1994 revision of CALJIC No. 2.90 deprived a defendant of due process of law by allowing a finding of guilt on the basis of a lesser standard of proof of guilt than due process requires. We also noted that the United States Supreme Court held that the use of the term "abiding conviction" was the proper standard. (*People v. Light*, supra, 44 Cal.App.4th at p. 887.) As the Court in *Victor* stated:
> "Although in this respect moral certainty is ambiguous in the abstract, the rest of the instruction . . . lends content to the phrase. The jurors were told that they must have 'an abiding conviction, to a moral certainty, of the truth of the charge.' . . . An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, *correctly states the government's burden of proof*. [Citations.]" (*Victor v. Nebraska, supra*, 511 U.S. at pp. 14 - 15, italics added.) Therefore, for the reasons expressed in *Light*, we reject appellants claim.

Unpublished Opinion in Case No. F034753, 15 -17.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970). The United States Supreme Court has held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994). The Victor Court further held that an instruction cast in terms of an "abiding conviction" as to guilt, without reference to "moral certainty," correctly stated the state's burden of proof." Id. at 14-15. The jury instruction at issue in this case is the revised version of CALJIC 2.90 recommended by the California Supreme Court following the U.S. Supreme Court's holding in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239 (1994), and Sandoval v. California, 511 U.S. 1, – S.Ct. – (1994).

In Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999), the Ninth Circuit rejected the argument that the California Supreme Court's usage of "abiding conviction" to describe the "clear and convincing" standard no longer supported the level of proof required for reasonable doubt. Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999) (referencing Colorado v. New Mexico, 467 U.S. 310, 316, 104 S.Ct. 2433, 2437-38 (1984)). The Court then expressly held the 1994 version of CALJIC 2.90

1 constitutional.

> Although the [Supreme] Court [in Colorado v. New Mexico] did use the phrase "abiding conviction" in its definition of the clear-and-convincing evidence standard, it did so in tandem with the use of the phrase "highly probable." [citation omitted] The language in the jury instruction in this case, on the other hand, does not. We therefore conclude that there is no reason to depart from established precedent expressly affirming jury instructions cast in terms of an abiding conviction.

Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999). In light of Victor and Lisenbee, the court finds the 1994 version of CALJIC 2.90 used at Petitioner's trial was appropriate and did not reduce the burden of proof. Thus, the trial court's issuance of this instruction was not contrary to or an unreasonable application of federal law. Accordingly, the court concludes that this claim does not provide a basis for habeas corpus relief.

In light of the above, the court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED, that judgment be entered for Respondent, and that the Clerk of the Court be directed to close this case.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 23, 2005**              /s/  **William M. Wunderlich**
mmkd34                                       UNITED STATES MAGISTRATE JUDGE